by the verdict. Upon the first point he cited Bennet v. Pixley, 7 Johns. 250; Campbell v. Jones, 6 Term R. 570; Humble v. Bland, Id. 257; Walker v. Harris, 1 Anst. 245; Jones v. Barkley, Doug. 690; and Turner v. Goodwin, 10 Mod. 190. And upon the second point, namely, that the omission was cured by the verdict. Collins v. Gibbs, 2 Burrows, 900; Sellon, Pr. 499; 1 Chit. Pl. 319; Worsley v. Wood, 6 Term R. 715; 2 Saund. 228, note b; Rawson v. Johnson, 1 East, 203, 209.

THE COURT overruled both motions; being of opinion that the verdict was not against nor without evidence; and that the declaration was cured by the verdict. (CRANCH, Chief Judge, doubting as to this point.)

## Case No. 3,228.

### CORCORAN v. HODGES.

[2 Cranch, C. C. 452.][1]

Circuit Court, District of Columbia. April Term, 1824.

PROMISSORY NOTE—LIABILITY OF INDORSER—EVIDENCE—CONSIDERATION.

This was an action by William W. and Thomas Corcoran against Thomas Hodges.

If a promissory note be indorsed by the defendant without an intention of giving credit to the note, and without having received any value for it, and only to comply with the form required by the plaintiff in the course of his business as an auctioneer, and if it was so understood at the time by the plaintiff, who declared he so considered it, the plaintiff cannot recover.

So decided by THE COURT. Verdict for defendant.

Motion for new trial, on the ground of misdirection of the jury by the court, overruled. THE COURT said that between immediate parties parol evidence is admissible to show that there was no consideration, and that the defendant did not indorse the note to give it credit; and that this was in effect the substance of the instruction given. Judgment for defendant. The note was for $418.55.

CORCORAN (HOLMEAD v.). See Case No. 6,627.

## Case No. 3,229.

### CORCORAN v. JONES.

[5 Cranch, C. C. 607.][1]

Circuit Court, District of Columbia. Nov. Term, 1839.

SLAVERY—BREACH OF CONTRACT.

In consideration that the plaintiffs, at the defendant's request, would sell and deliver to the

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

defendant, for the price of six hundred and sixty dollars, two negroes, of the value of two thousand dollars, as slaves for life, the defendant promised the plaintiffs that he would not sell them to any person south of the Potomac, out of the District of Columbia, and would not remove them out of the District of Columbia, south of the Potomac, and that on such removal the said slaves should be immediately entitled to their freedom. The plaintiffs, relying on the said defendant's said promise, and in consideration of six hundred and sixty dollars paid to them by the defendant, sold and delivered the said slaves to the said defendant for that price. The defendant sold them to persons south of the Potomac, out of the District of Columbia, and removed them out of the District of Columbia, south of the Potomac. *Held*, on demurrer, that the plaintiffs had no cause of action against the defendant.

Assumpsit by Thomas Corcoran's executors against Roger Jones. General demurrer to the declaration, which contained five counts.

1. The first count stated that the defendant, in consideration that at his request the plaintiffs would sell and deliver to him two negro girls, one named Eleanor, of the value of $1,000, and one named Julia Ann, of the value of $1,000, as slaves for life, the first for $350 and the other for $310; the defendant promised the plaintiffs that he would not sell the said negro girls, nor either of them, to any person south of the Potomac out of the District of Columbia, nor remove the said negro girls, or either of them, to any place out of the District of Columbia south of the Potomac, and that, on such removal, the slaves shall be immediately entitled to their freedom. And the said plaintiffs in fact say that they, relying on the said promise of the said defendant, did, in consideration of the said sums of money, sell and deliver to the said defendant the said two negro female slaves, Eleanor and Julia Ann, to be held by the said defendant as slaves for life, upon the condition aforesaid.

2. The second count stated a conversation between the plaintiffs and defendant respecting the sale and purchase of the said two female slaves of the value of $2,000, in which it was agreed that the plaintiffs should sell and deliver them to the defendant as slaves for life for the sum of $660, upon the express condition that they should not be sold to any person south of the Potomac out of the District of Columbia, nor removed out of the said District south of the Potomac, but on such removal the said slaves should be immediately entitled to their freedom. And the said defendant, in consideration that the plaintiffs agreed to sell and deliver the said slaves to the defendant, for the price and on the conditions aforesaid, promised the plaintiffs that he would keep and perform the said contract and the said condition, and would not sell the said negro female slaves, or either of them, to any person south of the Potomac out of the District of Columbia, nor remove them, or either of them, out of the said District south of the Potomac; and the plaintiffs, relying on the defendant's said promise,

did sell and deliver the said slaves to the defendant, as slaves for life, on the terms and conditions aforesaid.

3. The third count stated that the plaintiffs offered the said slaves, of the value of $2,000, for sale at public auction to the highest bidder; upon condition, however, that the said slaves, nor either of them, should be sold to any person south of the Potomac out of the District of Columbia, nor removed out of the said District south of the Potomac; but, in case of their being so removed, the said slaves should be immediately entitled to their freedom. That the defendant attended the said public sale, and bid for and purchased the said slaves, subject to the condition aforesaid, for the sum of $650, and received possession of the same, and in consideration thereof promised the plaintiffs that he would not sell the said slaves, or either of them, to any person south of the Potomac out of the District of Columbia, nor remove them, or either of them, nor suffer them, or either of them, to be removed out of the said District south of the Potomac.

4. The fourth count stated that the plaintiffs advertised and offered the said slaves for sale at public auction, as and upon the terms stated in the third count; that the defendant was present at the sale, and bought one of them, named Eleanor, of the value of $1,000, at and for the sum of $350; that she was delivered to, and accepted by the defendant, on the terms and conditions of the said sale, as set forth in the said advertisement; and the defendant, in consideration thereof, promised the plaintiffs that he would well and truly keep and perform the conditions of the said sale, and that the said slave should not be sold to any person south, &c., nor removed out of the District of Columbia south of the Potomac.

5. The fifth count related to the sale and purchase of the other of the two slaves, namely, Julia Ann, and was, in all other respects, exactly like the fourth count.

To these five counts there was this general conclusion: "Yet, the said defendant, not regarding his said several promises and undertakings so by him made in this behalf as aforesaid, but intending to injure and deceive the said plaintiffs in this respect, hath not kept and performed his said several promises and undertakings, but, on the contrary, hath knowingly sold the said several negro girls, hereinbefore mentioned, as slaves for life, to persons south of the Potomac out of the District of Columbia, and hath removed the said negro girls out of the District of Columbia, south of the Potomac, to places remote therefrom, and unknown to the said plaintiffs. Wherefore, the said plaintiffs say they are injured and have sustained damage to the value of two thousand dollars, and, therefore, they bring suit," &c.

To this declaration the defendant demurred.

R. J. Brent and Mr. Jones, for the defendant, contended that it did not appear by the declaration, that the plaintiffs had sustained any damage; the penalty for breach of the contract on the part of the defendant was the freedom of the slaves; the defendant is not liable for damages besides. There was no consideration for the defendant's supposed promise. It is not averred that the plaintiffs sold them for less than their full value, in consideration of the defendant's promise. It was nudum pactum.

Mr. Marbury, for the plaintiffs, cited Adams v. Anderson, 4 Har. & J. 558; Price v. Read, 2 Har. & G. 291; 5 Wheeler, Slav. 464. The defendant contracted with the plaintiffs. He has broken his contract, and the plaintiffs are entitled to recover damages. The freedom of the slaves is cumulative, and is no compensation for the plaintiffs' damage in selling the slaves so much below their value. Upon this demurrer, the facts are admitted that the slaves were worth $2,000, and that in consideration of the defendant's undertaking not to sell or remove them, as alleged in the declaration, the plaintiffs sold them to the defendant for $660; the difference is the consideration of the defendant's promise. The penalty is for the benefit of the slaves, but they can have no remedy upon this contract. They can only get relief by the plaintiffs' compelling the defendant to manumit them, or pay damages for his breach of contract. It was not necessary for the plaintiffs to aver fraud on the part of the defendant.

THE COURT (CRANCH, Chief Judge, not giving any opinion, as he had not had time to examine the declaration) immediately rendered judgment for the defendant on the demurrer.

---

CORCORAN (UNION BANK OF GEORGETOWN v.). See Case No. 14,353.

CORDERY (REYNOLDS v.). See Case No. 11,729.

---

# Case No. 3,229a.

## The CORDILLERA.

[5 Blatchf. 518.][1]

Circuit Court, S. D. New York. Nov. 19, 1867.

LIABILITY FOR NEGLIGENT SHIPPING OF CARGO.

Where the apparatus by which an article is being hoisted into a vessel from a lighter, and the horses that work it, belong to the vessel or to the stevedores who are engaged in the work, and are in the service of the vessel, the responsibility of the lighterman ceases, as a general rule, when the article is properly placed on the slings and hooked to the tackle,

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]